Filed 12/23/14; part. pub. and mod. order 1/15/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ADAM NICK et al., | |
|    Petitioners, | G049580 |
|      v. | (Alcoholic Beverage Appeals Board No. AB-9335) |
| DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL et al., | |
|     Respondents; | O P I N I O N |
| 7-ELEVEN, INC., | |
|    Real Party in Interest. | |

Original proceeding; review of decision of Alcoholic Beverage Appeals Board of the State of California. Decision affirmed.

Law Offices of Joshua Kaplan, Joshua Kaplan; Law Offices of Stephen W. Berger and Stephen W. Berger for Petitioners.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Senior Assistant Attorney General, Celine M. Cooper and Gary S. Balekjian, Deputy Attorneys General, for Respondents.

Solomon, Saltsman & Jamieson, Ralph Barat Saltsman and Stephen Warren Solomon for Real Party in Interest.

\*     \*     \*

In this original proceeding, petitioners Adam Nick and Sherry Nick (collectively, Nick) challenge respondent Department of Alcoholic Beverage Control's (Department) decision granting real party in interest 7-Eleven, Inc. (7-Eleven) a license to sell beer and wine at its store located in the City of Lake Forest (City). The Alcoholic Beverage Control Act (Bus. & Prof. Code, § 23000 et seq.; hereinafter Act)[1] prohibits the Department from issuing a license that would result in or add to an undue concentration of licenses unless the local governing body of the area where the applicant premises is located determines that issuing the license would serve "public convenience or necessity." (§§ 23958, 23958.4, subd. (b)(2).) The City determined issuing the license would serve public convenience or necessity and the Department relied on that determination in deciding to grant 7-Eleven's application.

Nick contends we must overturn the Department's decision because the Department improperly "ceded" its exclusive constitutional authority by treating the City's public convenience or necessity determination as binding and conclusive, rather than independently making its own determination. Nick also contends the City's public convenience or necessity determination is void and ineffective because (1) the City failed to make the determination within the time period specified by section 23958.4, subdivision (b)(2), and (2) the record lacks substantial evidence to support a public

---

[1] All statutory references are to the Business and Professions Code unless otherwise stated.

2

convenience or necessity determination by either the City or the Department. As explained below, these contentions fail because Nick misinterprets the governing legal authorities and standards.

Finally, Nick contends we must overturn the Department's decision because respondent Alcoholic Beverage Control Appeals Board (Appeals Board) found 7-Eleven misrepresented a material fact by failing to disclose a franchisee held a "hidden ownership" interest in the store at issue. As we explain, the Appeals Board made no such finding, but rather affirmed the Department's decision and then remanded for the Department to investigate the hidden ownership issue because Nick failed to raise it as a basis for denying 7-Eleven's application during the administrative hearing before the Department. Moreover, misrepresenting a material fact in obtaining a license is a ground for revoking or suspending a license that may be addressed after the license issues. Accordingly, we affirm the Department's and the Appeals Board's decisions.

I

FACTS AND PROCEDURAL HISTORY

7-Eleven operates a convenience store in the City that sells a variety of grocery, food, and other convenience items, including 7-Eleven's exclusive brand of certain items. Seeking to expand its offerings, 7-Eleven applied to the Department for an "off-sale" beer and wine license, which is a license to sell beer and wine for consumption off the premises.

In its initial investigation, the Department determined that granting 7-Eleven's request would result in an undue concentration of licenses because three other stores in the same census tract already held off-sale beer and wine licenses, including a gas station and convenience store Nick owned and operated across the street from 7-Eleven's store. The Department therefore required 7-Eleven to obtain a determination from the City that issuing the license would serve public convenience or necessity.

3

Acting on 7-Eleven's request, the City's Director of Development Services investigated the matter and concluded that issuing the license would serve public convenience or necessity. Nick appealed that determination to the City's Planning Commission and then to the City Council. The City Council conducted a public hearing on Nick's appeal and independently determined that issuing the license to 7-Eleven would serve public convenience or necessity. The City forwarded its determination to the Department. Nick sought to overturn the City's decision by seeking a writ of administrative mandamus, but the Superior Court denied Nick's writ petition and we affirmed that decision in *Nick v. City of Lake Forest* (Dec. 23, 2014, G047115) ___ Cal.App.4th ___ (*Nick I*) <http:www.courts.ca.gov/opinions.htm>.

Nick also filed a protest with the Department, raising several reasons why it should deny 7-Eleven's application, including claims that issuing the license would result in an undue concentration of off-sale licenses in the area and 7-Eleven offered nothing unique in the sale of alcoholic beverages that is not already available in the community. After receiving the City's public convenience or necessity determination, the Department's investigator completed her investigation regarding 7-Eleven, its application, the surrounding community, and Nick's protest. The investigator prepared a report analyzing Nick's protest and recommending the Department deny the protest and grant 7-Eleven's application.

In November 2012, the Department conducted an evidentiary hearing on Nick's protest at which the Department, 7-Eleven, and Nick each called witnesses and presented evidence. The administrative law judge issued a proposed decision denying Nick's protest and granting 7-Eleven's application. The proposed decision explained issuing the license to 7-Eleven would raise the total of off-sale liquor licenses to four, but this would result in a minimal degree of overconcentration because the statutory formula establishing the threshold for undue concentration authorized three licenses for the census tract. The proposed decision also noted that, after considering a wide variety of factors

4

and making numerous findings, the City determined issuing the license would serve public convenience or necessity despite the undue concentration of licenses in the area.

Effective February 2013, the Department adopted the administrative law judge's proposed decision as its own and Nick appealed the decision to the Appeals Board. The Appeals Board affirmed the Department's decision to deny Nick's protest and grant 7-Eleven's application, but it also remanded for the Department to conduct further proceedings it deemed appropriate on an issue Nick failed to raise before the Department—whether 7-Eleven materially misrepresented a franchisee's possible ownership interest in the store that would justify suspending or revoking 7-Eleven's license under section 24200.

Nick timely filed a petition for a writ of review challenging the Department's and Appeals Board's decisions. We granted the petition, ordered the Department to certify the administrative record of its proceedings, and now consider Nick's petition.

II

DISCUSSION

A.      *Relevant Legal Background on Licenses to Sell Alcoholic Beverages*

The California Constitution grants the Department "exclusive power" to license the sale of alcoholic beverages "in accordance with the laws enacted by the Legislature." (Cal. Const., art. XX, § 22.) The Department may, "in its discretion, . . . deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals, or that a person seeking or holding a license has violated any law prohibiting conduct involving moral turpitude." (*Ibid*.; *Rondon v. Alcoholic Beverage Control Appeals Bd.* (2007) 151 Cal.App.4th 1274, 1281.)

5

The Legislature enacted the Act to regulate the sale of alcoholic beverages and establish procedures and standards for granting, denying, suspending, and revoking licenses to sell alcoholic beverages. Upon receipt of an application for a liquor license, the Act requires the Department to "make a thorough investigation to determine whether the applicant and the premises for which a license is applied qualify for a license and whether the provisions of [the Act] have been complied with, and [also to] . . . investigate all matters connected therewith which may affect the public welfare and morals." (§ 23958.) The Department must deny an application "if either the applicant or the premises for which a license is applied do not qualify for a license under [the Act]." (*Ibid*.)

As pertinent here, the Act also requires the Department to deny an application if its investigation reveals "issuance would result in or add to an undue concentration of licenses, *except as provided in Section 23958.4*." (§ 23958, italics added.) Section 23958.4 provides an undue concentration of off-sale retail licenses occurs when "the ratio of off-sale retail licenses to population in the census tract or census division in which the applicant premises are located exceeds the ratio of off-sale retail licenses to population in the county in which the applicant premises are located." (§ 23958.4, subd. (a)(3).)

When the issuance of a license would result in or add to an undue concentration, section 23958.4 provides the Department nonetheless "may issue a license . . . [¶] . . . if the local governing body of the area in which the applicant premises are located, or its designated subordinate officer or body, determines within 90 days of notification of a completed application that public convenience or necessity would be served by the issuance." (§ 23958.4, subd. (b)(2).) If the local governing body or its designee "does not make a determination within the 90-day period, then the [D]epartment may issue a license if the applicant shows the [D]epartment that public convenience or necessity would be served by the issuance." (*Ibid*.) Regardless whether the local

6

governing body or the Department makes the public convenience or necessity determination, the exclusive power to issue a liquor license remains with the Department. (Cal. Const., art. XX, § 22; see §§ 23958, 23958.4, subd. (b)(2).)  The Department's decision to grant or deny an application for a license to sell alcoholic beverage "is broad and inclusive and is not subject to judicial control when exercised within its legal limits." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1073 (*Deleuze*).)

Any party aggrieved by the Department's decision to issue or deny a license may appeal that decision to the Appeals Board.  (Cal. Const., art. XX, § 22; §§ 23081, 23084.)  The Appeals Board's scope of review is narrow:  it "shall not receive evidence in addition to that considered by the [D]epartment" and its review "shall be limited to the questions whether the [D]epartment has proceeded without or in excess of its jurisdiction, whether the [D]epartment has proceeded in the manner required by law, whether the decision is supported by the findings, and whether the findings are supported by substantial evidence in the light of the whole record."  (Cal. Const., art. XX, § 22; § 23084; *Deleuze*, *supra*, 100 Cal.App.4th at p. 1071.)  The Appeals Board may remand a matter for reconsideration if it determines the Department failed to consider relevant evidence either because the evidence could not have been produced at the Department's hearing despite the exercise of reasonable diligence or the Department erroneously refused to consider the evidence.  (*Ibid.*)

Any party aggrieved by the Appeals Board's final decision may file a petition for writ of review with "the Supreme Court or . . . the court of appeal for the appellate district in which the proceeding arose."  (§ 23090; *Deleuze*, *supra*, 100 Cal.App.4th at p. 1071.)  The appellate court reviews the Department's decision, not the Appeals Board's decision, and exercises the same limited review as the Appeals Board.  (§ 23090.2; *Kirby v. Alcoholic Bev. etc. Appeals Bd.* (1972) 7 Cal.3d 433, 436 (*Kirby*); *Deleuze*, at p. 1072.)  Furthermore, section 23090.2 provides, "Nothing in this

7

article shall permit the court to hold a trial de novo, to take evidence, or to exercise its independent judgment on the evidence." (§ 23090.2.) Thus, the scope of judicial review "is quite limited." (*Sepatis v. Alcoholic Bev. etc. Appeals Bd.* (1980) 110 Cal.App.3d 93, 102 (*Sepatis*).)

"Neither this court nor the [Appeals] Board may '"disregard or overturn a finding of fact of the Department . . . for the reason that it is considered that a contrary finding would have been equally or more reasonable."' [Citation.] '[I]f it be conceded that reasonable minds might differ as to whether granting [a license] would or would not be contrary to public welfare, such concession merely shows that the determination of the question falls within the broad area of discretion which the Department was empowered to exercise.' [Citation.]" (*Kirby*, *supra*, 7 Cal.3d at p. 436; see § 23090.3 ["The findings and conclusions of the [D]epartment on questions of fact are conclusive and final and are not subject to review"].)

"Of course, the discretion exercised by the Department under section 22 of article XX of our Constitution '"is not absolute but must be exercised in accordance with the law, and the provision that it may revoke [or deny] a license 'for good cause' necessarily implies that its decisions should be based on sufficient evidence and that it should not act arbitrarily in determining what is contrary to public welfare or morals.'" [Citations.] Nevertheless, it is the Department, and not the [Appeals] Board or the courts, which must determine whether 'good cause' exists for denying a license upon the ground that its issuance would be contrary to public welfare or morals. [Citations.]" (*Kirby*, *supra*, 7 Cal.3d at pp. 436-437.) "As long as there is substantial evidence to support the Department's determination, as long as the decision is a reasonable one under the evidence, the decision must be upheld as a valid exercise of the Department's discretion conferred by the Constitution." (*Department of Alcoholic Bev. Control v. Alcoholic Bev. etc. Appeals Bd.* (1982) 136 Cal.App.3d 315, 318 (*Kolender*); see *Department of*

8

*Alcoholic Bev. Control v. Alcoholic Bev. etc. Appeals Bd.* (1982) 133 Cal.App.3d 814, 817; *Sepatis*, *supra*, 110 Cal.App.3d at pp. 102-103.)

B.      *The Department Did Not "Ced[e]" Its Authority to the City*

Nick contends we must overturn the Department's decision to grant 7-Eleven's application because the Department improperly "ceded" its authority to the City by treating the City's public convenience or necessity determination as "conclusive and binding." According to Nick, the City's determination was merely advisory and the Department was required to independently investigate 7-Eleven's application to make its own public convenience or necessity determination. Nick, however, misconstrues the governing statutes and mischaracterizes the Department's investigation and determination.

As explained above, section 23958 prohibits the Department from issuing a license that would result in or add to an undue concentration of licenses unless "the local governing body of the area in which the applicant premises are located . . . determines within 90 days of notification of a completed application that public convenience or necessity would be served by the issuance." (§ 23958.4, subd. (b)(2).) If the local governing body makes this determination, the Department "may" issue the license despite an undue concentration. (§§ 23958, 23958.4, subd. (b)(2).) Nothing in the plain language of either section 23958 or section 23958.4 requires the Department to independently determine whether issuing the license would serve public convenience or necessity if the local governing body already made that determination. (*Jenkins v. Teegarden* (2014) 230 Cal.App.4th 1128, 1138-1139 (*Jenkins*) ["""If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls"""].) Section 23958.4, subdivision (b)(2) requires the Department to make its own public convenience or necessity determination only if the local governing body fails to do so within the 90-day period specified in the statute. (§ 23958.4, subd. (b)(2) ["If the

local governing body, or its designated subordinate officer or body, does not make a determination within the 90-day period, then the [D]epartment may issue a license if the applicant shows the [D]epartment that public convenience or necessity would be served by the issuance"].)

The previous version of section 23958 allowed the Department to deny an application that would result in or add to an undue concentration of licenses unless the applicant made a showing *to the Department* that issuing the license would serve public convenience or necessity. (*Kolender*, *supra*, 136 Cal.App.3d at pp. 318-319, fn. 2.) In 1994, the Legislature amended section 23958 and enacted section 23958.4 to delete the requirement that the Department make the public convenience or necessity determination, and instead shifted that responsibility to the local governing body. (Stats. 1994, ch. 630, §§ 1, 2.) By changing the Act, we must presume the Legislature intended to eliminate the Department's obligation to make the public convenience or necessity determination in favor of the local governing body. (See *City of Irvine v. Southern California Assn. of Governments* (2009) 175 Cal.App.4th 506, 522 ["'Under the rules governing statutory construction, when the Legislature enacts an amendment, we presume it "'indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one.'" [Citation.] "'Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights'"'"]; *Suman v. BMW of North America, Inc.* (1994) 23 Cal.App.4th 1, 10-11 ["'It is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded'"].)

Nick cites nothing in the language of section 23958.4 nor any case authority to support his contention the Department must independently make its own public convenience or necessity determination. Instead, Nick points to the constitutional provision granting the Department the exclusive power to license the sale of alcoholic beverages. According to Nick, the Department's "blind adherence" to the City's public

10

convenience or necessity determination results in an unconstitutional divestiture of its exclusive authority. Nick's argument fails because it misconstrues both the governing constitutional provision and statues, and also ignores the other factors the Department considers in deciding whether to issue a license.

Article XX, section 22 of the California Constitution grants the Department the exclusive power to license the sale of alcoholic beverages "in accordance with laws enacted by the Legislature." (Cal. Const., art. XX, § 22; *Stroh v. Midway Restaurant Systems, Inc.* (1986) 180 Cal.App.3d 1040, 1048 ["The Department has the power to issue and revoke licenses according to the specifications set out in the statutes'].) Consistent with this constitutional provision, the Legislature established the limitation on licenses based on undue concentration, created the exception to that limitation based on public convenience or necessity, and required the local governing body to make the public convenience or necessity determination rather than the Department. (§§ 23958, 23958.4.) By relying on a local governing body's public convenience or necessity determination, the Department does not divest itself of its constitutional authority, but rather follows the statutory instructions on how to exercise that authority.[2]

Moreover, in making a public convenience or necessity determination a local governing body does not license the sale of alcoholic beverages; it merely makes a determination to aid the Department in exercising its constitutional authority. The Department still retains the discretion and final decision on whether to issue the license. Indeed, the Department still must determine whether the applicant and the premises for which a license is sought satisfy the Act's other requirements, and whether issuing the

---

[2]    Nick also contends allowing the Department to rely on the City's public convenience or necessity determination violates the California Constitution's supremacy clause, which precludes any local governmental action that is in conflict with state law. Again, Nick is mistaken. The City is not taking any action that conflicts with state law; it is making a determination that state law requires it to make.

11

license would be contrary to public welfare or morals. (See Cal. Const., art. XX, § 22; § 23958.) A local governing body's public convenience or necessity determination is only one of many factors bearing on the Department's final decision; by no means is it determinative.

Nick's contention also fails because the Department did not "blind[ly] adhere[]" to the City's determination and treat it as "binding and conclusive." As section 23958 requires, the Department made a thorough investigation of 7-Eleven, its store, the surrounding community, and all matters that may affect the public welfare and morals. The Department's investigator spoke with law enforcement officials about the application, visited 7-Eleven's store on numerous occasions, worked with the City to obtain the necessary information, and spoke with Nick (the only protestant) regarding his objections. When the investigation revealed the area where 7-Eleven's store is located already had the maximum number of off-sale licenses based on the statutory definition of undue concentration, the Department required 7-Eleven to obtain a public convenience or necessity determination from the City.

After receiving the City's public convenience or necessity determination, the Department reviewed the factors the City considered in reaching its determination, and the specific findings the City made to support it. Based on its own investigation, the Department concluded the City's determination was reasonable and that issuing the license would benefit the neighborhood by providing a convenient location to purchase convenience items, including 7-Eleven's exclusive brand, while also purchasing alcoholic beverages. The Department's investigator also noted the neighborhood would benefit because the store was located in a shopping center that both residents and workers in the area regularly use to obtain common convenience products and services. Finally, the Department's investigator noted issuing the license would result in only a minimal degree of overconcentration because it would be the fourth off-sale license in a census tract that allows three off-sale licenses without a public convenience or necessity determination.

12

The Department therefore did not cede any of its authority to license the sale of alcoholic beverages to the City.

C.    *The City Timely Issued Its Public Convenience or Necessity Determination*

Nick contends the City's public convenience or necessity determination is void, and the Department therefore was required to make its own independent determination, because the City failed to act within the 90-day time period section 23958.4, subdivision (b)(2) establishes. According to Nick, the 90-day period began on June 29, 2010, when the Department "requested" the City make a public convenience or necessity determination, and therefore the City's authority to act expired before its decision on October 4, 2010. The statute's plain language does not support Nick's contention. (*Jenkins*, *supra*, 230 Cal.App.4th at pp. 1138-1139 [statute's unambiguous and plain meaning controls].)

Section 23958.4, subdivision (b)(2) states, "The 90-day period shall commence upon receipt by the local governing body of (A) notification by the [D]epartment of an application for licensure, or (B) a completed application according to local requirements, if any, whichever is later." Accordingly, neither the Department nor anyone else *requesting* a public convenience or necessity determination starts the 90-day period. Rather, it is the local governing body's *receipt* of the Department's notification or a completed application that triggers the time period. Nick, however, fails to point to any evidence in the record showing when the City received either the request the Department purportedly made on June 29, 2010, or a completed application under its local requirements.

The City Council resolution announcing the City's public convenience or necessity determination states, "on July 6, 2010, the City *received* a request from Permits and Licenses Resource Center ('PLRC'), on behalf of 7-Eleven, requesting a determination of Public Convenience or Necessity." (Italics added.) The City treated

13

this request as the trigger for the 90-day period and began processing the request. It therefore timely made the public convenience or necessity determination 90 days later, on October 4, 2010.

In Nick's view, the City Council resolution fails to establish the City timely made its determination because neither the Department nor 7-Eleven offered any evidence to show the City's receipt of PLRC's request marked the completion of 7-Eleven's application under the City's local requirements, and thereby triggered the 90-day period. In the absence of such evidence, Nick argues we must use the Department's June 29, 2010 request as the trigger for the time period. He is mistaken for four reasons.

First, as explained above, the trigger date is the date the City received the Department's request, not the date the Department made the request. Second, section 23958.4, subdivision (b)(2), states the 90-day period starts when the local governing body receives the Department's notification or a completed application under its local requirements, *whichever is later*. Even if we assume the City received the Department's request on June 29, 2010, the time period still would not start on that date unless the City also received 7-Eleven's completed application on or before that date, and Nick offers no evidence on this point. Third, the City Council resolution shows the City treated receipt of the PLRC's request on 7-Eleven's behalf as the trigger for the statutory period, and therefore as 7-Eleven's completed application. Fourth, the burden was on Nick to show the City failed to act within the 90-day time period because it is presumed the City regularly performed its official duty. (Evid. Code, § 664; *Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 820.) The purported deficiency in the evidentiary record therefore is fatal to Nick's position; neither the Department nor 7-Eleven have the burden to establish timeliness.

14

D.      *Substantial Evidence Supports the Public Convenience or Necessity Determination*

Regardless whether the Department or the City was required to make the public convenience or necessity determination, Nick contends the record in this case cannot support a determination that issuing the license to 7-Eleven would serve public convenience or necessity.  In Nick's view, a public convenience or necessity determination requires evidence showing the license applicant "would offer something 'unique' in connection with the sale of alcoholic beverages" that is not already offered in the community, and 7-Eleven cannot make that showing because Nick's convenience store located directly across the street sells "an identical product mix of consumer items," including beer and wine.  Nicks argument lacks merit because it relies on an erroneous legal standard.

In *Nick I*, we explained the Act does not define the phrase "public convenience or necessity," but rather leaves it to the local governing body to determine on a case-by-case basis what factors bear on the public convenience or necessity determination.  (*Nick I*, *supra*, ___ Cal.App.4th at pp. ___ [pp. 13-14, 17].)  Contrary to Nick's argument, there is no single fact that must be established.  Instead, a local governing body makes a public convenience or necessity determination to aid the Department in exercising its broad discretion to issue liquor licenses, and therefore the local governing body exercises the same broad discretion as the Department.  Accordingly, the primary considerations are whether the local governing body relied on reasonable factors based on the facts of the particular case, and whether substantial evidence supports the determination.  (*Id*. at pp. ___ [pp. 16-17].)  The courts will not disturb the determination unless the local governing body acts arbitrarily or without evidentiary support.  (*Id*. at pp. ___ [pp. 13-14].)

To challenge the sufficiency of the evidence to support the public convenience or necessity determination on 7-Eleven's application, Nick therefore would have to show no substantial evidence supported either the City's determination or the

15

Department's decision to rely on that determination. It is not enough to show the City or the Department could have reached a different decision; Nick must show they were required to do so. Nick fails to meet this burden because his challenge to the sufficiency of the evidence is based on an erroneous legal standard. In *Nick I*, we concluded the City's public convenience or necessity determination on 7-Eleven's application was reasonable and supported by substantial evidence. (*Nick I*, *supra*, ___ Cal.App.4th at pp. ___ [pp. 15, 17].) Nick fails to provide any valid reason why the Department's decision to rely on the City's determination was unreasonable or unsupported by the evidence.

E.     *No "Hidden Ownership" Finding Exists That Required the Department to Deny 7-Eleven's Application*

Nick contends we must overturn the Department's decision to grant 7-Eleven's application based on the Appeals Board's finding 7-Eleven failed to disclose a co-ownership interest a franchisee held in the store at issue. According to Nick, the failure to disclose this interest taints 7-Eleven's entire application and violates section 24200, subdivision (c), which allows the suspension or revocation of the license if the applicant has misrepresented a material fact in obtaining a license. Nick's argument is without merit because the Appeals Board did not make a "hidden ownership" finding, as Nick contends.

Although the Appeals Board acknowledged a 7-Eleven consultant testified on cross-examination that a franchisee held an ownership interest 7-Eleven did not identify on its application, the Appeals Board made no findings on hidden ownership because Nick failed to raise the issue as a basis for denying 7-Eleven's application, and therefore 7-Eleven had no opportunity to present evidence to the Department explaining the true nature of its relationship with the franchisee. The Appeals Board therefore affirmed the Department's decision granting 7-Eleven's application, but remanded the matter for the Department "to take appropriate steps to determine what, if any, ownership

16

interest exists and what bearing, if any, that has on the propriety of the Department's issuance of a license."

This course of action is consistent with the governing authorities, and does not invalidate the Department's decision to grant 7-Eleven's application. The Appeals Board was precluded from receiving any evidence the Department did not consider in reaching its decision (Cal. Const., art. XX, § 22), but the Appeals Board could remand for the Department to consider evidence that could not in the exercise of reasonable diligence have been presented to the Department during the original proceedings (*ibid.*; § 23084; *Deleuze*, *supra*, 100 Cal.App.4th at p. 1071). Here, the Appeals Board determined 7-Eleven reasonably could not have presented evidence regarding its legal relationship with the franchisee during the original proceedings because Nick did not raise the issue. Moreover, the code section on which Nick relies addresses the permissible grounds for suspending or revoking a license; it does not address the decision to grant or deny an application. (See § 24200.) The Appeals Board's decision appropriately reconciles these authorities by upholding the Department's decision to grant 7-Eleven's application and preserving the misrepresentation issue by remanding it to the Department for further consideration. If the Department's investigation reveals 7-Eleven made a material misrepresentation, the Department may proceed to suspend or revoke 7-Eleven's license as it deems appropriate. If the Department's investigation reveals no material misrepresentation, then no further action is required.

III

DISPOSITION

The Department's and Appeals Board's decisions are affirmed.  The Department, the Appeals Board, and 7-Eleven shall recover their costs on appeal.


ARONSON, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.

Filed 1/15/15

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ADAM NICK et al., | G049580 |
| Petitioners, | |
| | (Alcoholic Beverage Appeals Board No. AB-9335) |
| v. | |
| DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL et al., | ORDER (1) DENYING REHEARING; (2) MODIFYING OPINION; AND (3) CERTIFYING OPINION FOR PARTIAL PUBLICATION; NO CHANGE IN JUDGMENT |
| Respondents, | |
| 7-ELEVEN, INC., | |
| Real Party in Interest. | |

The petition for rehearing filed by appellants Adam Nick and Sherry Nick is DENIED.

It is ordered the opinion filed in the above-entitled matter on December 23, 2014, is hereby MODIFIED as follows:

1. On page 2, the second paragraph starting with "Nick contends we must overturn" and continuing at the top of page 3, delete the entire paragraph and replace it with the following two paragraphs:

_____

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.C., II.D., and II.E.

In the published portion of this opinion, we address Nick's contention the Department improperly "ceded" its exclusive constitutional authority by treating the City's public convenience or necessity determination as binding and conclusive, rather than independently making its own determination. As explained below, this contention fails because it misconstrues the duties of the Department and the City under the Act, and also mischaracterizes the Department's investigation and decision in granting 7-Eleven's application.

The unpublished portion of the opinion addresses Nick's contentions the City's public convenience or necessity determination is void because the City failed to make the determination within the time period specified by section 23958.4, subdivision (b)(2), and the record lacks substantial evidence to support a public convenience or necessity determination by either the City or the Department. These contentions are not persuasive because they fail to recognize the proper event triggering the statutory time period and the broad deference given to the City in making a public convenience or necessity determination.

2. On page 3, the first sentence of the first complete paragraph, starting with "Finally, Nick contends," delete the entire sentence and replace it with the following sentence:

Finally, we address in the unpublished portion of the opinion Nick's contention we must overturn the Department's decision because respondent Alcoholic Beverage Control Appeals Board (Appeals Board) found 7-Eleven misrepresented a material fact by failing to disclose a franchisee held a "hidden ownership" interest in the store at issue.

3. On page 4, the fourth sentence of the third paragraph starting with "The proposed decision also noted" and continuing at the top of page 5, delete the word

2

"that" between the words "noted" and "after," and delete the words "the undue" between the words "despite" and "concentration" and replace them with the words "an over," so the sentence reads:

> The proposed decision also noted, after considering a wide variety of factors and making numerous findings, the City determined issuing the license would serve the public convenience or necessity despite an over concentration of licenses in the area.

4. On page 5, the second sentence of the first full paragraph, starting with "The Appeals Board affirmed," delete the words "it deemed appropriate" between the words "further proceedings" and "on an issue" so the sentence reads:

> The Appeals Board affirmed the Department's decision to deny Nick's protest and grant 7-Eleven's application, but it also remanded for the Department to conduct further proceedings on an issue Nick failed to raise before the Department—whether 7-Eleven materially misrepresented a franchisee's possible ownership interest in the store that would justify suspending or revoking 7-Eleven's license under section 24200.

5. On page 9, the first sentence of the first full paragraph, starting with "Nick contends we must overturn the Department's decision," delete the words "we must overturn the Department's decision to grant 7-Eleven's application because" so the sentence reads:

> Nick contends the Department improperly "ceded" its authority to the City by treating the City's public convenience or necessity determination as "conclusive and binding."

6. On page 11, the first full sentence of the partial paragraph at the top of the page, starting with "Nick's argument fails," delete the word "statues" between the words "provision and" and "and also," and replace it with the word "statutes" so the sentence reads:

3

Nick's argument fails because it misconstrues both the governing constitutional provision and statutes, and also ignores the other factors the Department considers in deciding whether to issue a license.

7. On page 12, the third sentence of the first full paragraph, starting with "The Department's investigator spoke with law enforcement officials," delete the parenthetical statement "(the only protestant)" between the words "with Nick" and "regarding his" so the sentence reads:

> The Department's investigator spoke with law enforcement officials about the application, visited 7-Eleven's store on numerous occasions, worked with the City to obtain the necessary information, and spoke with Nick regarding his objections.

These modifications do not change the judgment.

Finally, 7-Eleven, Inc. and the California Department of Alcoholic Beverage Control request that our opinion be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c), except for parts II.C., II.D., and II.E. We therefore PARTIALLY GRANT the requests and order the opinion published except for parts II.C., II.D., and II.E.

ARONSON, ACTING P. J.

WE CONCUR:

FYBEL, J.

IKOLA, J.

4